IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

STEPHEN ECHOLS,

      Plaintiff,

   v.

MORPHO DETECTION, INC.; UNITED
STATES DEPARTMENT OF HOMELAND
SECURITY; TRANSPORTATION SECURITY
AGENCY; and JANET NAPOLITANO, in
her official capacity as
Secretary of Homeland Security,

      Defendants.

_____/

No. C 12-1581 CW

ORDER DENYING
PLAINTIFF'S MOTION
FOR LEAVE TO FILE
A SECOND AMENDED
COMPLAINT (Docket
No. 42)

Plaintiff Stephen Echols moves for leave to file a second amended complaint (2AC). Defendants United States Department of Homeland Security (DHS), Transportation Security Agency (TSA) and Secretary of Homeland Security Janet Napolitano (collectively, Federal Defendants) oppose Plaintiff's motion. Having considered the arguments set forth by the parties in their papers, the Court DENIES the motion.

BACKGROUND

According to Plaintiff's first amended complaint (1AC), he was formerly employed by Defendant Morpho Detection, Inc. as a field service technician at the Los Angeles International Airport, where Morpho contracts with DHS and TSA to provide airport security. 1AC ¶¶ 8-9. After having passed all previous government airport and company background checks that he underwent, Plaintiff received a letter from TSA dated March 9, 2010, stating that he was "ineligible to work on any TSA contract

United States District Court
For the Northern District of California

1  based on" various issues identified during a background check

2  process, including that he had purportedly engaged in criminal

3  conduct and failed to disclose criminal charges filed against him.

4  Id. at ¶¶ 8-11.  Plaintiff alleged that he was not the person who

5  committed some of the crimes, that he "was the victim of identity

6  theft" and that the remaining information was inaccurate because

7  the case against him was dismissed.  Id. at ¶ 13.  He further

8  alleged that he communicated with TSA and Morpho about the errors

9  and that, despite repeated requests, TSA failed to provide

10  Plaintiff with a copy of his background report.  Id. at ¶ 15.  He

11  further alleges that Morpho terminated him as a result of the

12  failed background check.  Id. at ¶¶ 15-16.

13      Plaintiff filed this case on March 29, 2012, originally

14  asserting claims against Morpho Detection only.  Docket No. 1.  On

15  October 12, 2012, the Court granted the parties' stipulation to

16  permit Plaintiff to file the 1AC.  Docket Nos. 23, 25.

17      In his 1AC, Plaintiff asserted four claims against Federal

18  Defendants: (1) willful violation of the Fair Credit Reporting Act

19  (FCRA), 15 U.S.C. §§ 1681-1681x; (2) negligent violation of the

20  FRCA; (3) violation of the Freedom of Information Act (FOIA), 5

21  U.S.C. § 552; and (4) declaratory relief that Plaintiff is

22  eligible to be employed by the federal government or organizations

23  that require passage of the eQuip background check.

24      On January 22, 2013, Federal Defendants moved to dismiss the

25  FCRA claims and declaratory relief claim, but not the FOIA claim.

26  Docket No. 36, 1-2 & n.1.  In his opposition brief, Plaintiff

27  requested leave to amend to assert new claims under the

28  Administrative Procedures Act (APA), the due process clause of the

United States District Court
For the Northern District of California

Fifth Amendment or both, which were not plead in his 1AC.  Docket No. 37.

On February 27, 2013, the Court granted Federal Defendants' motion to dismiss and dismissed his FCRA and declaratory relief claims without leave to amend.  Docket No. 40.  The Court granted Plaintiff permission to file a motion for leave to amend his complaint to add new claims against Federal Defendants under the APA or the due process clause, including a declaratory relief claim based on these provisions.

LEGAL STANDARD

Federal Rule of Civil Procedure 15(a) provides that leave of the court allowing a party to amend its pleading "shall be freely given when justice so requires."  Because "Rule 15 favors a liberal policy towards amendment, the nonmoving party bears the burden of demonstrating why leave to amend should not be granted." Genentech, Inc. v. Abbott Laboratories, 127 F.R.D. 529, 530-531 (N.D. Cal. 1989) (citing Senza-Gel Corp. v. Seiffhart, 803 F.2d 661, 666 (Fed. Cir. 1986)).  Courts consider five factors when assessing the propriety of a motion for leave to amend: undue delay, bad faith, futility of amendment, prejudice to the opposing party and whether the plaintiff has previously amended the complaint.  Ahlmeyer v. Nev. Sys. of Higher Educ., 555 F.3d 1051, 1055 n.3 (9th Cir. 2009).  Although these five factors are generally all considered, "futility of amendment alone can justify the denial of a motion."  Id. at 1055; see also Moore v. Kayport Package Express, 885 F.2d 531, 538 (9th Cir. 1989) ("Leave to amend need not be given if a complaint, as amended, is subject to dismissal.").

3

DISCUSSION

Plaintiff moves for leave to amend his pleading to assert claims for violation of the Fifth Amendment, the APA and the Privacy Act, 5 U.S.C. § 552a, et seq.  Plaintiff's proposed 2AC also maintains the FOIA claim that he previously asserted against Federal Defendants in his 1AC.  Federal Defendants had not moved to dismiss that claim.  Federal Defendants oppose the motion to amend, arguing that leave to amend should be denied because all of his claims, including the FOIA claim, are improperly plead and would be subject to a motion to dismiss.

I.   APA Claim

In the APA claim in his proposed 2AC, Plaintiff alleges that he was not given procedures similar to individuals covered by the Defense Industrial Personnel Security Clearance Program, 32 C.F.R. part 155, and to individuals subject to the Department of State's debarment procedures for contractors, 48 C.F.R. § 609.406-3.  2AC ¶ 69-70.  He also alleges that the TSA and DHS's failure to renew his security clearance was arbitrary and capricious, deprived him of his Fifth Amendment due process rights and his right to pursue his chosen profession, and was "unsupported by substantial evidence and unwarranted by the facts."  Id. at ¶¶ 71-75.

Federal Defendants contend that Plaintiff should not be granted leave to assert his proposed APA claim because he has adequate remedies available under the Privacy Act.  Plaintiff responds that the APA and the Privacy Act are "not identical as the APA provides relief where there is a violation of a constitutional right and the Privacy Act does not," and that he should be permitted to seek alternative relief.  Reply at 7.

**United States District Court**
For the Northern District of California

The APA provides for judicial review of "[a]gency action made reviewable by statute" and of "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. The Supreme Court has held that, in enacting the APA, "Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action," and it "does not provide additional judicial remedies in situations where the Congress has provided special and adequate review procedures." Bowen v. Massachusetts, 487 U.S. 879, 903 (1988); see also Brem-Air Disposal v. Cohen, 156 F.3d 1002, 1004 (9th Cir. 1998) ("federal courts lack jurisdiction over APA challenges whenever Congress has provided another 'adequate remedy'"). Other courts have found that a plaintiff's APA claim could not proceed where adequate remedies existed under the Privacy Act. See, e.g., Ware v. U.S. Dept. of Interior, 2006 WL 1005091 (D. Or.); Schaeuble v. Reno, 87 F. Supp. 2d 383, 393-94 (D. N.J. 1998); Mittleman v. United States Treasury, 773 F. Supp. 442, 449 (D.D.C. 1991).

Plaintiff argues that the Privacy Act does not provide relief for constitutional challenges and the APA does. However, here, the basis of Plaintiff's proposed APA claim is that the Federal Defendants did not provide him with adequate procedures when denying his security clearance and that the denial was not supported by the facts. The Privacy Act requires that an agency permit individuals to have access to their records, to request amendment of the records and to request review of refusal to amend the record. 5 U.S.C. § 552a(d). It also allows an individual to bring suit if any agency refuses to comply with requests for access or to amend a record, in which case the court can order the

United States District Court
For the Northern District of California

agency to provide access to the records or to amend the record as the court directs.  5 U.S.C. § 552a(g)(1)(A)-(B), (2), (3).  The Privacy Act further permits an individual to bring suit if an agency does not maintain a record about the individual "with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications [or] character" of the individual "that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual" or if the agency failed to comply with other provisions of the Privacy Act, with a resulting adverse effect on the individual.  5 U.S.C. § 552a(g)(1)(C)-(D).  In such actions, if the court determines that the agency acted intentionally or willfully, the individual may recover actual damages sustained as a result of the agency's refusal or failure to act, in an amount no less than $1,000.  5 U.S.C. § 552a(g)(4).  The court may also assess attorneys' fees and costs for any of these actions under certain circumstances.  5 U.S.C. § 552a(g)(2)(B), (3)(B), 4(B).  Federal Defendants have thus shown that the Privacy Act provides adequate remedies for Plaintiff to challenge the denial of his security clearance.  In fact, the scope of remedies that he seeks under the Privacy Act is broader than what he seeks under the APA.  For example, he seeks damages and de novo review from this Court under the Privacy Act.

Plaintiff asserts that, to prevail under the APA, "a plaintiff 'need not demonstrate she would have been hired if the [Agency] had complied with the law.'"  Mot. at 6 (quoting Preston v. Heckler, 734 F.2d 1359, 1365 (9th Cir. 1984)); Reply at 7. Plaintiff, however, cites only cases that address whether an

**United States District Court**
For the Northern District of California

1  individual has suffered an injury-in-fact such that he has

2  standing to pursue a claim, including one under the APA.  In any

3  action brought in federal court, not just those brought under the

4  APA, the party who invokes the court's authority must show that he

5  has standing sufficient to meet the Article III requirements.

6  See, e.g., Valley Forge Christian College v. Americans United for

7  Separation of Church & State, Inc., 454 U.S. 464, 471-72 (1982).

8  Plaintiff does not provide any authority that demonstrates that he

9  is required to make a greater showing in order to achieve relief

10 under the Privacy Act or that adequate relief is not available

11 under that Act.

12     Thus, the Court finds that, because the Privacy Act provides

13 adequate relief and sets forth specific procedures, Plaintiff's

14 APA claim is futile.  Accordingly, Plaintiff's request for leave

15 to amend to assert this claim is DENIED.

16 II.  Due Process Claim

17     In the proposed 2AC, Plaintiff seeks to bring a claim for

18 violation of the Due Process Clause of the Fifth Amendment.  He

19 alleges that the failure to provide him with a security clearance

20 violates his "constitutionally protected liberty interest in

21 pursuing his chosen profession."  2AC ¶¶ 64-65.  He seeks a

22 declaration under the Declaratory Judgment Act, 28 U.S.C. § 2201,

23 that he is entitled to adequate procedures by which to challenge

24 the deprivation of this right.  Id. at ¶ 66.  He seeks an order

25 directing Federal Defendants to provide him with such procedures,

26 including notice of the specific reasons for the denial of the

27 clearance, an opportunity to respond to those reasons, a hearing

28 with notice, the chance to cross-examine any individuals providing

adverse information and an opportunity to present evidence of his own.  Id. at ¶ 67.

Federal Defendants argue that Plaintiff has not alleged the deprivation of a constitutionally protected liberty or property interest and thus cannot maintain a due process claim.  The Court previously held that, to the extent that Plaintiff sought in his 1AC a determination that he should have passed the background clearance, his claims were not justiciable and that the Court did not have jurisdiction to review the merits of the decision regarding his clearance.  Docket No. 40, 16.  Federal Defendants argue, among other things, that Plaintiff is seeking to evade this ruling by defining his profession as one that requires a security clearance.  Plaintiff responds that he does have a constitutionally protected right to follow a chosen trade or profession, including that alleged in his proposed 2AC.

In Department of Navy v. Egan, 484 U.S. 518 (1988), the Supreme Court held that employment decisions based on the executive branch's security clearance decisions are not reviewable by the Merit Systems Protection Board (MSPB).  Then, in Webster v. Doe, 486 U.S. 592 (1988), the Supreme Court confirmed that federal courts do not have jurisdiction to review the merits of employment decisions regarding security clearances.  It held that the CIA director's decision to terminate a CIA employee for a security reason was committed to the discretion of the director by law, thereby precluding judicial review under the Administrative Procedures Act (APA).  Id. at 601.  In Webster, the Court also concluded that the same considerations did not deprive the courts of jurisdiction to review constitutional claims and remanded for

United States District Court
For the Northern District of California

further proceedings, while expressly declining to consider whether the plaintiff in fact had presented colorable constitutional claims.  Id. at 603-04 & n.8.

Later, in Dorfmont v. Brown, 913 F.2d 1399 (9th Cir. 1990), the Ninth Circuit applied Egan and Webster to find that judicial review of the merits of a decision regarding a security clearance was barred.  In that case, the plaintiff sued the Department of Defense "seeking an injunction against the revocation of her security clearance," arguing that the decision violated her constitutional "rights to procedural and substantive due process." Id. at 1400.  The court stated that, although Egan's holding was limited to review by the MSPB, "[t]he logic of that decision precludes judicial review as well."  Id. at 1401.  "When it comes to security matters, a federal court is 'an outside nonexpert body.'  We have no more business reviewing the merits of a decision to grant or revoke a security clearance than does the MPSB."  Id. (quoting Egan, 484 U.S. at 529).  The court stated, "Although Dorfmont fashions her claims as due process challenges," her arguments--save two--were in fact "attacks on the merits of the decision to lift her security clearance."  Id.  The court held that "the district court has no authority to review" those challenges to the merits of the security clearance decision.  Id. at 1402.

As to the due process challenges, the Dorfmont court held that, although it is justiciable, "a claim for denial of due process stemming from revocation of a security clearance is not a colorable constitutional claim."  Id. at 1404.  The court explained that "the requirements of due process do not apply

unless Dorfmont can first show that she has a cognizable liberty or due process interest in her security clearance." Id. at 1403 (citations omitted). However, "[b]ecause there is a strong presumption against the issuance or continuation of a security clearance, and because the availability of a security clearance depends on an affirmative act of discretion by a granting official, 'no one has a "right" to a security clearance.'" Id. (quoting Egan, 484 U.S. at 528). "Where there is no right, there is no process due under the Constitution." Id. (citations omitted). The plaintiff in Dorfmont made the same argument that Plaintiff makes here, that there is a right to pursue one's chosen profession. The court rejected that argument, stating that "Dorfmont has not been deprived of the right to earn a living," only of "the ability to pursue employment requiring a Defense Department security clearance," which "stands on precisely the same footing as the security clearance itself," and "there is no liberty interest in employment requiring such clearance." Id. As Federal Defendants note, Plaintiff may not evade this restriction by defining his "chosen profession" so narrowly as to require a security clearance. See 2AC ¶ 65 (defining his "chosen career" as "TSA engineer who repairs security screening devices used at airports in the United States").

Plaintiff seeks to differentiate Dorfmont on its facts. He states that, in that case, the plaintiff had lost her security clearance because she hired a Bulgarian native who "was serving a life sentence in federal prison for his part in the attempted hijacking of an airliner" to perform computer programming for her in conjunction with a government defense contract. Id. at 1400.

**United States District Court**
For the Northern District of California

He contrasts those facts with his allegations here, that someone stole his identity and committed some of the crimes identified on the background check.  However, these differing allegations do not undermine the Ninth Circuit's clear holding that there is no protected liberty interest in employment that requires a security clearance.

Plaintiff cites two out-of-circuit decisions which he contends involved individuals in similar situations and support the conclusion that there is a due process right to pursue employment requiring a security clearance, Kartseva v. Dept. of State, 37 F.3d 1524 (D.C. Cir. 1994), and Baillargeon v. Drug Enforcement Adm., 638 F. Supp. 2d 235 (D. R.I. 2009).  However, to the extent that the courts in Kartseva and Baillargeon may have reached a different conclusion than the Ninth Circuit in Dorfmont about the colorability of a constitutional due process claim based on the revocation or denial of a security clearance, the Dorfmont decision, which is directly addresses this point, is binding on this Court.

Accordingly, the Court DENIES Plaintiff's motion to amend to assert a due process claim.

III. Claim under the Privacy Act

Federal Defendants contend that Plaintiff's proposed Privacy Act claim would be subject to dismissal because venue does not lie in this Court for this claim.  They also argue that this claim may not be maintained against Secretary Napolitano.

A. Venue

The Privacy Act provides that the proper venue for an action to enforce its provisions is "in the district in which the

1   complainant resides, or has his principal place of business, or in

2   which the agency records are situated, or in the District of

3   Columbia." 5 U.S.C. § 552a(g)(5). Federal Defendants argue that

4   venue is improper in this district because Plaintiff resides in

5   the Central District of California, which is where he was

6   employed, and the records are situated in Washington, DC,

7   Arlington, Virginia or Winchester, Virginia.

8       Plaintiff responds that it is "not clear how venue in the

9   Central District would benefit the Federal Defendants" and that he

10   is "not inconvenienced" by litigating in the Northern District of

11   California, which he appears to contend is relevant "[i]f the

12   venue provisions . . . permit venue in the plaintiff's place of

13   residence for the convenience of the plaintiff." Reply at 10.

14   However, because the Privacy Act does not authorize venue in this

15   District, the convenience of the parties does not allow this claim

16   to be brought here.

17       To the extent that Plaintiff suggests that this Court has

18   pendent jurisdiction over this claim because of the claims against

19   Morpho, whose principal place of business is within this district,

20   this argument is unavailing. "Under the doctrine of pendent

21   venue, claims governed by a general venue statute may be brought

22   in the same district as a claim governed by a special venue

23   statute if the claims arise out of the same nucleus of facts."

24   Norkol/Fibercore, Inc. v. Gubb, 279 F. Supp. 2d 993, 999 (E.D.

25   Wis. 2003) (citation omitted). "However, the converse is not

26   true." Id. (citation omitted). "Where claims are governed by a

27   special venue statute . . . , which limits venue to specified

28   districts, such claims may be brought only in a district specified

**United States District Court**
For the Northern District of California

by the statute." Id. (citation omitted). "This is so because congressional intent to limit the available districts is clear and cannot be circumvented." Id. (citation omitted).

Thus, the Court DENIES Plaintiff's motion to amend his pleading to assert a Privacy Act claim because venue in this district is not proper. Plaintiff may refile this claim in an appropriate district.

B. Claim against Secretary Napolitano

Federal Defendants also argue that the Privacy Act claim is not properly asserted against Secretary Napolitano. Plaintiff responds that he "is required to name the head of the agency under the FTCA" and that he "opposes the dismissal of Ms. Napolitano individually unless the Federal Defendants make a clear showing that the Federal Agencies named separately remain responsible for the acts complained of." Reply at 11.

Plaintiff does not assert this claim under the FTCA but rather under the Privacy Act. The Privacy Act's provision for civil remedies applies only against federal agencies, not individuals. See 5 U.S.C. § 552a(g)(1) (stating that an "individual may bring a civil action against the agency"); see also Martinez v. Bureau of Prisons, 444 F.3d 620, 624 (D.C. Cir. 2006); Bruce v. United States, 621 F.2d 914, 916 n.2 (8th Cir. 1980). Therefore, the Secretary Napolitano is not an appropriate Defendant for this claim.

IV. FOIA claim

Federal Defendants purport to oppose Plaintiff's motion to amend to assert his FOIA claim for the same reasons that they oppose amendment to assert the Privacy Act claims. However, the

FOIA claim was already asserted in the 1AC, was not dismissed in the Court's prior order and, as a result, in the instant motion to amend, Plaintiff does not seek leave to assert it; rather, it is already asserted.

Federal Defendants implicitly acknowledge this by noting that, "if the instant motion for leave to amend were to be denied outright, the FOIA claim plead by Plaintiff in his FAC would still be pending before this Court." Opp. at 10 n.3. They suggest that the Court resolve the instant motion without regard to the venue issues and "permit the Federal Defendants an opportunity to raise these venue issues in a separate motion under Rule 12(b)(3)." Id.

The Court declines to defer consideration of the venue issue as to the Privacy Act claim this time and has addressed it above. If Federal Defendants do bring an additional motion to dismiss the FOIA claim based on improper venue, they should address whether this defense was waived pursuant to Federal Rule of Civil Procedure 12(h)(1) by omitting it from their motion to dismiss the 1AC or whether they would be willing to waive their venue defense to the Privacy Act and FOIA claims to allow all claims to be tried together. The Court would also entertain a motion or stipulation to transfer the case, including the claims against Morpho, to the Central District of California or another appropriate district. The Court is also considering whether to transfer the case on its own motion to Plaintiff's home forum, the Central District of California, which is where he was employed by and terminated by Morpho. See 1AC ¶¶ 2, 8 & Ex. 1.

United States District Court
For the Northern District of California

14

CONCLUSION

For the reasons set forth above, Plaintiff's motion for leave to file a 2AC is DENIED (Docket No. 42).

The case management conference currently set for May 1, 2013 is maintained.

If Federal Defendants intend to file a further motion to dismiss the FOIA claim plead in the 1AC, they shall do so within seven days of the date of this Order and shall include therein their views regarding transfer of the case in its entirety to the Central District of California or another appropriate district. If Federal Defendants do so, Plaintiff shall file a response within seven days thereafter, including his views on transfer, Federal Defendants shall file a reply seven days later and the case management conference will be continued.  Morpho should also file a short brief addressing transfer only by the date that Plaintiff's response is due.  Any such motion to dismiss will be decided on the papers.

If no motion or stipulation to transfer is filed, then the parties shall include their views on transfer in their joint case management statement.

IT IS SO ORDERED.


Dated: April 11, 2013                         _____
                                              CLAUDIA WILKEN
                                              United States District Judge